IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| LONZA J. ADAMS, JR., #1204268 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv173 |
| TIMOTHY SIMMONS, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Lonza J. Adams, Jr., a prisoner confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil lawsuit pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

The present Memorandum Opinion concerns the Defendants' motion for summary judgment (docket entry #41). The Plaintiff did not file a response by the deadline of December 3, 2010.

Plaintiff's Factual Claims

The original complaint was filed on October 26, 2009. On June 22, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff is legally blind. He testified that he has experienced problems in several areas because he is legally blind, but his most significant problem concerns getting an education. He would like to get a G.E.D. and then go on to college, but he has not received assistance at the Polunsky Unit in order to pass the required classes before taking the G.E.D. exam.

1

He was previously confined at the Central Unit. An aide was assigned to assist him there, and he did very well in his classes. The aide, for example, could read test questions to him, and he could dictate his answers to him. The Plaintiff was then transferred to the Polunsky Unit because it was purportedly better suited for handicapped inmates. An aide has not been assigned to help him at the Polunsky Unit.

The Plaintiff sued Mr. McWhorter, his Education Case Manager, because he failed to investigate the matter and failed to provide adequate assistance and/or adoptive aids for the purpose of assisting him. The Plaintiff asked him for an extended time to take tests or a visual interpreter, but McWhorter told him there was nothing else that the Windham School District could provide.

The Plaintiff sued Law Library Supervisor McKee because he did not provide him with any help regarding the research of legal matters and preparation of legal documents. He asserted that an aide would be best, but having Braille books or large print books would help.

The Plaintiff sued Assistive Disability Services ("ADS") Case Manager Crawford because she was responsible for providing adaptive aids to him and failed to do so. He acknowledged that he received a cane and a magnifying glass. He stated that the cane was helpful, but the magnifying glass gave him headaches. She did not provide any assistance with education or the law library.

The Plaintiff was permitted to proceed with his claims against McWhorter, McKee and Crawford. In the original complaint, the Plaintiff stated that he was suing each Defendant in their official and individual capacities for the sum of $10,000 punitive damages each and $10,000 compensatory each. He did not ask for any relief other than damages.

## Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment (docket entry #41) on November 16, 2010. They acknowledged that the Plaintiff's vision is significantly impaired by a hereditary disorder.

2

They denied, however, that the Plaintiff stated any claim for relief, that he has pled or suffered any cognizable injury, or that he has been the victim of discrimination in any way. They argued that they are entitled to qualified and Eleventh Amendment immunities. In support of their motion, they attached copies of relevant portions of the Plaintiff's grievance and classification records, along with affidavits from Kimberly Cotton and Defendant Joseph O. McWhorter.

The affidavit by Defendant McWhorter included the following statement:

I have personal knowledge that in 2008, prior to his filing of the above-captioned lawsuit, Adams refused the educational opportunities offered to him by WSD, and refused to be tested for Special Education. In September, 2010, after being made aware of the above-captioned lawsuit, I interviewed him concerning his previous refusals of services. At that time, Adams expressed a desire to be re-enrolled in school and also be evaluated for Special Education based upon his visual handicap.

Adams was placed in regular academics on 09/10/2010. The following week, upon my direct referral, Adams was interviewed by Freida Spiller, a WSD Special Education diagnostician. He signed the medical release forms and we received his medical records relating to his visual impairment.

A follow-up evaluation was scheduled with Ms. Spiller but could not be completed due to an institutional lockdown on the Polunsky Unit from 09/27/10 to 10/12/10. On 10/26/10, Ms. Spiller was able to test Adams, and a determination has been made that he does exhibit special needs.

Adams has been referred for transfer to a facility better equipped to handle his special needs. If his transfer is denied, a request has been made to allow modifications to his educational achievement testing. Instructional modifications, based upon available resources at the Polunsky Unit, have been included in Adams' assessment.

In sum, Adams is currently enrolled in academic classes with instructional modifications to accommodate his visual impairment. He has been referred for both testing modifications and transfer for special programming. Adams is also on the waiting list for WSD programs for horticulture and landscaping.

The Classification Records included a document signed by the Plaintiff on April 14, 2008, showing that he refused to participate in an Individualized Treatment Plan ("ITP"). The document was also signed by Defendant McWhorter.

Kimberly Cotton stated in her affidavit that she is the Program Manager of the ADS Program. The primary focus of case management in the ADS program is to assure that offenders assigned to the program have equal opportunity to access programs, services and facilities that are available to non-disabled general population offenders. ADS does not hold the responsibility of providing services to allow patient participation in Windham School District and Law Library Services. She added that the ADS does not provide educational services related to the Windham School District. She asserted that Defendant Crawford provided ADS services as dictated by the ADS policy manual.

The legal arguments presented by the Defendants will be fully discussed in the Discussion and Analysis section of this Memorandum Opinion.

Plaintiff's Response

The deadline for the Plaintiff to respond to the motion for summary judgment was December 3, 2010. On November 17, 2010, he was reminded that the deadline was December 3, 2010. He was advised that the case could be dismissed for want of prosecution if he failed to timely file a response. *See Martinez v. Johnson*, 104 F.3d 769 (5th Cir. 1997). As of the issuance of this Memorandum Opinion, he had not filed a response.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

5

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The first issue raised by the Defendants was Eleventh Amendment immunity. It should be recalled that the Plaintiff is suing the Defendants for damages in both their official and individual capacities. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Defendants are entitled to summary judgment to the extent that the Plaintiff is suing them for damages in their official capacity.

The Defendants next argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government

officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). Under the traditional approach, a court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* The Fifth Circuit has accordingly held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). More recently, the Supreme Court held that a case may be dismissed based on either step in the qualified immunity analysis: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

The Defendants focused on the traditional approach by initially discussing whether the Plaintiff has shown that they violated his constitutional rights. The first area discussed concerned the Plaintiff's § 1983 claims. The Defendants noted that the Plaintiff stressed that he was blind and he accused them of being deliberately indifferent. They also correctly noted that he "pled nothing with regard to any deprivation or risk to his health or safety. He has pled nothing with respect to any defendant's state of mind. He also pled no injury, actual or speculative, resulting from any deliberate indifference."

7

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In the present case, the Defendants acknowledged that the Plaintiff's vision was significantly impaired by a hereditary disorder. The Plaintiff has not alleged nor shown, however, that the Defendants caused or contributed to his blindness or that his condition amounted to an excessive risk to inmate health or safety. The Plaintiff has not cited any Fifth Circuit case law standing for the proposition that blindness is *per se* a serious medical need triggering the protection of the Eighth Amendment, and this Court has been unable to find any such cases. The Plaintiff likewise failed to allege or provide any competent summary judgment evidence supporting an inference that the Defendants acted with deliberate indifference regarding a serious medical need. Overall, the Defendants are entitled to summary judgment with respect to the deliberate indifference claim since the Plaintiff provided no competent summary judgment evidence supporting a claim of deliberate indifference. *See Cullum v. TDCJ*, 375 Fed. Appx. 417, 419 (5th Cir. 2010).

The next issue raised by the Defendants concerned the Plaintiff's access to court claim. The Plaintiff alleged that Law Librarian McKee failed to provide meaningful and/or adequate assistance

8

with navigation of the law library and with the filing of his § 1983 lawsuit and habeas corpus litigation. Consequently, he was subjected to extortion by inmates who charged him fees for legal and secretarial assistance.

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson v. Avery*, 393 U.S. 483, 486 (1969). "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The Supreme Court has held that the right of meaningful access to court imposes a duty on prison officials to provide indigent inmates with either an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. at 828. The Texas prison system provides both attorneys and law libraries. The parameters of the prison system's access to court plan has been defined in conjunction with the *Ruiz* litigation.

To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted); *Lewis v. Casey*, 518 U.S. 343, 351 (1996). *See also Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). He must identify the nonfrivolous, arguable underlying legal claim. *Id.* The Plaintiff has been able to file his lawsuits. He has not been denied access to the courts. The Plaintiff has not identified any nonfrivolous, arguable underlying legal claim. The Defendants are entitled to summary judgment based on the denial of access to court claim.

The Plaintiff's ADA and RA claims are potentially more significant. Title II of the ADA, which applies to state prison inmates, prohibits a "public entity" from discriminating against a qualified individual with a disability "by reason of" that disability. *Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). Legally blind individuals may bring claims under the ADA and RA against state agencies for failing to accommodate their disabilities. *Miller v. Texas Tech University Health Sciences Center*, 421 F.3d 342 (5th Cir. 2005).

The Defendants argued that they are entitled to summary judgment on the ADA claim since the Fifth Circuit recently issued a ruling directly on point to this case in *Hale v. King*, 624 F.3d 178 (5th Cir. 2010). They noted that the ADA does not validly abrogate sovereign immunity for any claim asserted by a disabled inmate based upon denial of equal access to educational programs. *Id.* at 185. They argued that the Plaintiff has no cause of action under the ADA for discriminatory denial of access to educational programs. It is again noted that the Plaintiff did not respond to the argument. The Court finds that the decision is on point. The Plaintiff has not attempted to distinguish his situation from the situation in *Hale v. King*. The Defendants are entitled to summary judgment on the ADA claim.

The Defendants also argued that the Plaintiff failed to establish a *prima facie* case under the RA. In order to do so, he must allege that a specific program or activity with which he was involved, and thereby discriminated against, received or directly benefits from federal financial assistance. *Lightbourn v. County of El Paso*, 188 F.3d 421, 427 (5th Cir. 1997). Such pleading is required regardless of whether the State of Texas or its relevant agencies actually receive federal funds. *Id.* The Defendants correctly pointed out that the Plaintiff did nothing more than mention the RA in his claims. He failed to establish a cause of action. The Plaintiff failed to file a response to the motion for summary judgment to correct this problem, thus the Defendants are entitled to summary judgment.

It should be recalled that the Plaintiff is seeking compensatory and punitive damages against the Defendants. The Fifth Circuit has specified that a "plaintiff asserting a private cause of action for violations under the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002), *cert. denied*, 540 U.S. 810 (2003). The Fifth Circuit has applied this standard in cases involving the Texas prison system. *Norman v. TDCJ-ID*, 293 Fed. Appx. 285, 287 (5th Cir. 2008). Punitive damages are unavailable. *Barnes v.Gorman*, 536 U.S. 181, 189-90 (2002). Acts of negligence do not come within the ambit of the ADA. *Foley v. City of Lafayette, Indiana*, 359 F.3d 925, 931 (7th Cir. 2004). The Plaintiff has not shown that any of the Defendants intentionally discriminated against him. Moreover, for purposes of summary judgment analysis, he cannot rely on conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The Plaintiff did not respond to the motion for summary judgment. He failed to satisfy his burden to defeat the Defendants' motion for summary judgment.

The Defendants are entitled to summary judgment based on the first prong in the qualified immunity analysis. They also appropriately argued that the Plaintiff has not shown that their actions were objectively unreasonable in light of the law as it existed at the time the conduct occurred and in light of the information they possessed. *Anderson v. Creighton*, 483 U.S. at 641. The Plaintiff has not overcome the Defendants' right to summary judgment based on qualified immunity.

The Court is of the opinion, and so finds, that the Defendants' motion for summary judgment has merit and that it should be granted. It is therefore

**ORDERED** that the Defendants' motion for summary judgment (docket entry #41) is **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **9** day of **December, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE